Good morning. Can you hear me? I'm Keith Bradley for CIDCO and EJ will be yielding us their time. And I'd like to reserve three minutes for rebuttal, please. Thank you. So I could talk a long time about how no double-hulled tanker has ever spilled oil in comparable circumstances and, of course, did not in this case. But I'd like to focus on the notion that a Coast Guard officer can unilaterally determine a key element of liability. Before we get there, can you just address the appellate jurisdiction issue? Yeah, absolutely. So what we're asking the court to do in that sense is simply apply the plain language of Rule 9H, which says a claim can be designated. We did designate a claim in this – multiple claims in this case, as did EJ, and any case that includes an admiralty claim is an admiralty case. The reason to do it that way, as set forth by the advisory committee notes and as set forth by ROCO, is that in the interest of the efficiency that is the preference for admiralty cases and is the reason for A3, that it may often be the case that if you resolve of a non-admiralty claim, that that might dispose of the admiralty claims as well. And that is certainly true in this case. And that's leaving aside the question. Let's even just take for the moment that the government – let's assume the government's claim is non-admiralty. As you know, we dispute that as well. But let's just take that for the moment, that the clearly admiralty claims in this case are SIGCO's against EJ and against Margaret R. Shipping, EJ's against its insurer. Resolution – those are integrally linked. You can't get more admiralty than those. And those are integrally linked to the underlying casualty here. And resolution of the government's claim, that is the central thing determining liability that would arise on those admiralty claims. So given the widespread agreement that an admiralty case is anything that includes an admiralty claim and that you can have an interlocutory appeal on the non-admiralty case. Just so I follow, would the effect of your rule be that the third-party plaintiff claim, had it been resolved, that could have been taken up on interlocutory appeal? If I understand your question correctly, I think you're asking had we had an adjudication of a third-party claim, could that have had its own appeal? Yes, I think it could have, Your Honor. Interlocutory. Interlocutory, yes. I think that could have. Assuming – and I should say – assuming in terms of the rights and liabilities, right? And what would be the efficiency of that? The – well, again, the efficiency is the efficiency for the whole admiralty case, yes? Yes. And that would efficiently resolve, for example, there's all of these disputes about who exactly is – like, bears the ultimate liability. Then if you had like a – can the third-party plaintiff also have a non-admiralty claim attached? I suppose in theory one could, yes. But then the logic of your case would be the non-admiralty claim by the third-party plaintiff could be brought as an interlocutory appeal, and that's hard to see the efficiencies of that for the admiralty case. Well, Your Honor, two responses. So that doesn't mean you're wrong. Yeah. I'm just having trouble understanding the logic of either position because it doesn't seem like there's a whole lot of efficiency either way necessarily, whichever way we rule. Well, let me give you two responses to that if I could. One is that – I mean first off, we just have to look at the statute. The statute does not call for interlocutory appeals of admiralty claims. It just doesn't. It says admiralty cases. Well, the whole thing turns on do we read into claim and pleader plaintiff because of the background history. I mean so that's the Fifth Circuit's position is that you do, and your position is you don't. Well, Your Honor, actually, if I could, the Fifth Circuit – that is not actually the Fifth Circuit's position, first thing. It's not in the briefs, but we'll submit a letter about noble drilling, a case from 1985. It's the most recent articulation by the Fifth Circuit of their position. Fair, but the older one usually prevails. Second, this court in Concordia also treated the case as an admiralty case based on the counterclaim in that case. It asked whether the – actually, sorry. In that case, it was whether it was a – not about the case. It was about the jury trial rate of that counterclaim. Put it aside. The Fifth Circuit doesn't control what we do. Concordia is unlikely to control what we do. I just – the basic argument is that, yes, you're right. We look at the text.  Oftentimes, we'll read text in context. The relevant context of the claim is the background history of admiralty law premerger, and in that context, it makes sense, given the repeated statements about the admiralty plaintiff's – the plaintiff's authority to control is this an admiralty case or not, that it doesn't make a lot of sense to now read this as if that history didn't exist and take claim to – I mean, after all, some rules refer to third-party claims. This one doesn't. It just says claims. So why not read it in light of that history since they didn't specify as talking about the plaintiff's claim? So I would say that, first off, the history and the various cases that one thinks of are typically single – like one plaintiff versus one defendant. So they just don't address that question one way or the other. And I would say also I would turn that question around, Your Honor. There are places in the federal rules that refer to third-party defendants. No, it just makes it worse. Sometimes they do, and sometimes they don't. Sometimes they don't, right? In this one specifically, and especially since the 1997 amendment, it does not say plaintiff, defendant, third party. It says claim. It says a claim and a pleading. Well, it says a case that involves a claim, right? So I guess the question is are there two cases here? The government's case against your clients doesn't involve an admiralty claim. Your case against the folks that you've sued in your third-party complaint does. Why aren't there two different cases here? That's an interesting idea. Traditionally, we speak of a case being a single case. And the line I would suggest is the line about whether they are integrally linked. And they clearly are, right? I mean there's no real separation between what's going on between us and the third party and the cross-claim defendants and the government. Those are very tightly linked. And they are, of course, properly in within one case. They're absolutely linked, but, you know, again, just following up on Judge Barron's question, usually the way the analysis was done was from the plaintiff's perspective. Did the plaintiff elect admiralty? And the United States did not. And it seems clear that it did not. And I think you cited to a case bulk, if I'm pronouncing it correctly, the fact that they were very different. So, you know, in trying to interpret this language, which normally was interpreted from the plaintiff's perspective, from the United States' perspective, this is not a case that involves – the case they brought does not involve an admiralty claim. So, again, how should we be doing the reading? And I'll just layer on top of that because our own interlocutory jurisdiction rule, we've said we interpret it generally, narrowly. So this would obviously be an extension of interlocutory jurisdiction, as Judge Barron said. It would allow us to potentially decide a non-admiralty claim in a third-party complaint. And then we've gone quite far afield from the original case filed by the plaintiff. Well, Your Honor, I think it's not that far afield. I mean everything about the third-party and the cross-claim defendants rises or falls. No, no, no. That's not what Judge Rickleman is saying. The logic of your rule would enable a non-admiralty claim attached to a third-party claim to be appealed as an interlocutory matter for the sake of ensuring the efficient resolution of the case. And I'd have to say it's not obvious. That seems like quite an enlargement of our interlocutory jurisdiction. And there's zero risk of that problem in the circumstance where we confine it to – now, I guess the more challenging case is the counterclaim. Yes. The counterclaim is a challenging case. And that is Concordia has actually concluded that was an admiralty counterclaim. I would say also that in terms of the efficiency, again, the non-admiralty – Why wouldn't it be possible at least to say in a counterclaim – I don't know if there's – is there anything that gives us guidance on whether a third-party plaintiff's claim is properly understood as the case, even if we thought that a counterclaim is the case? I have to admit I didn't totally follow the question. I may not have myself. But what I understood was that Drickelman's zeroing in on the word case in the rule. And one thought is when you have a whole new plaintiff, third-party, maybe that's best understood as not the case anymore for purpose of the rule. Right. And one could think that without necessarily thinking that a counterclaim was not part of the case. Yeah. So we could have – so one understanding of it would be – I was just wondering, is there anything in any other aspect of civil procedure law that would suggest thinking of a third-party plaintiff's claim differently than a counterclaim for purpose of what's a case? I don't think that there is. And I think the line for all of it is I'm blanking on which rule it is that gives you the notion of integrally linked, that tells you which things can be brought within the same case and which things can't. But I think that line is the same for both of them. Both the counterclaim and the third-party claim can be brought if they arise out of the same transaction or occurrences. These clearly did. And if they do, they're part of the same case. If they don't, then they're not part of the same case. Well, can the third-party claim be decided without there being a decision in the primary case? Not in this case, no, Your Honor. And so consequently – But just to understand, I understand that's true, but does it have anything to do with the rule you're asking us to adopt about the meaning of Rule 9? Well, maybe. And the reason I say maybe is I can't tell you about the universe of potential third-party claims that might be interrelated to a given occurrence. But in the common fact pattern, the third-party claim is about they're liable to us because we're liable here. And then, no, you can't have this decision without having this one. In fact, I don't think I – So you're almost saying the way to look at it is in general, it would be efficient to have the third-party claims given the nature of what they would often be. Yes, yes. And if I may follow up on just that thought, Your Honor, I think that will – most likely that is always the case, but always is dangerous work. Thank you. Did you have questions on the other issues? And you have three minutes. Thank you. Counsel for Appolite, please come up and introduce yourself on the record. May it please the Court. My name is Alan Brabender, and I represent the United States. Addressing the threshold question of appellate jurisdiction, the government has a problem with how this case came to this Court. The United States does not have an interest in seeing admiralty jurisdiction interpreted narrowly because we do bring a lot of cases in admiralty. But we do have a problem with how this case got to this Court, and that is, as this Court knows, it's an interlocutory summary judgment order. The defendants initially sought permission to appeal that interlocutory order pursuant to 1292A3. The district court denied that certification, and it was then and only then that the defendants claimed that they had a right to appeal in admiralty under 1292A3. It's also a problem, we think, that if a – Like it's a waiver? No, the problem is the fact that it could be a problem if a defendant can change a plaintiff's admiralty or non-admiralty delegation by bringing claims against third parties that allegedly sound in admiralty. We think that creates a large potential for mischief. Just spell that out for us. Well, so there's certain aspects of admiralty such as a non-jury trial. But that could be – we're just talking about the meaning of Rule 9, which is about the interlocutory appeals. Are there other features of Rule 9? Because that wouldn't carry over necessarily to what the rules should be under the Seventh Amendment, what's a case for purposes of a jury trial or anything like that. Fair enough, Your Honor, but it allows these sort of interlocutory appeals. So why is that? What's the big mischief there? Well, every – most of the time you have to wait until final judgment in order to appeal. And if every order of consequence is now appealable, that can create mischief. I'm not saying the defendants did it in this case, but someone could bring a third-party claim just to appeal an interlocutory order. I think that's the mischief. Did your argument go to the timing? It sounded like it went to the timing, but that they didn't claim admiralty until the court denied permission to appeal. Was there some point in time before then that you're saying that they should have designated it as a case in admiralty? No, I think what we're saying is that there's potential for mischief in other cases. Well, there is, but there's potential for benefit in allowing it if the third-party claim is quite linked. So does the government have a view between the two? You don't have to, but – Yes, we do have. And we should view this as read plaintiff into claim? Well, our view is the view of the Fifth Circuit that the claims have to be integrally linked. And the Fifth Circuit didn't define what it meant by integrally linked, but the defendants in their reply brief proposed a standard from this court, the Ponce case, that we think could work. And that is that the claims have to be the rise of the same common nucleus of fact, and they have to be – and the interlocutory order – review of the interlocutory order must conserve judicial resources. Okay, two thoughts on that one. And do you think that's met here or not? No, we do not think it's met. It's questionable whether or not the claims arise out of the same nucleus of common facts, since the indemnification and the subrogation claims are based in contract and other statutory provisions. But we don't think exercising interlocutory appellate jurisdiction would conserve judicial resources in this case. Because the defendants' claims against the third parties depend on the final judgment. There's this other court out there that seems to not like us making stuff up, roughly speaking, and reading things into text. So I'm having a little trouble seeing where this constraint, which may make all the sense in the world, comes into the text of Rule 9. I can see the argument that you could read claim to mean plaintiff and pleader means plaintiff. And I can see the opposite idea that case means case, claim means claim. So I'm having a little trouble seeing how I read Rule 9 to say when it would really make all the sense in the world to do it, you can do it. But when it wouldn't make all the sense in the world, you can't. I think it comes into determining what is the case. And I think it comes into determining what is the case for purposes of Rule 9. And it's all part of the same case. The claims are all part of the same case, as long as – And the test of whether it's part of the same case is whether it can serve judicial resources to do it. That's one part of the test. But obviously, things that are part of the case, we don't let – I mean, generally, things that are part of the case, you can't have an interlocutory appeal. I mean, you can't overcome that by making a showing, oh, it can serve judicial resources in this particular instance. Well, the concern – It just seems like a distinct question of whether it's the case. It's just one part of the test. The other test arises out of the same common case of fact. But it's this court's standard. This is already this court's standard. It's from this court's decision in Ponce. And Ponce was a little bit different because that was an admiralty case, and the question was whether or not there was interlocutory public jurisdiction over a non-admiralty claim. So the sort of misgist we're talking about doesn't – does not occur in that situation. But that's the standard that we would propose to the court, and we do not believe it is met here, Your Honor. And if I may, the defendants also claim that the United States' own claim sounds an admiralty when you look at the totality of the circumstances because the United States didn't object to the admiralty designation. We don't think that makes a lot of sense. There's no reason for the United States to object. The United States is not a party to those claims. But if I would also suggest if this court went down that route, it may make the court's job a bit easier because it would deal – it would handle the third party – the oddness of the third party complaint aspect. And it also may make the court's job on the merits slightly easier, and that's because if this case does sound an admiralty, if the United States' case does sound an admiralty, as Justice Gorsuch – I just want to back up for a second on Ponce when you said we held that. Am I right that Ponce was dealing with the word case in 1333? You might be right, Your Honor. Because here the question is, what does admiralty case mean for purposes of Rule 9? That would be right, but I think you could use Ponce in 1333 as an analogy, Your Honor. So Justice Gorsuch explains in his concurring opinion in SEC v. Jarkissi that admiralty cases are just much different, that historically in admiralty, the courts in England and the colonial courts – Before you get into this history, just one other practical point. If under Rule 9 we thought that you could bring the appeal on the third party plaintiff claim, either because it meets the Ponce test or it doesn't, even if it doesn't meet the Ponce test because of the plain text of Rule 9, if we thought that were so, one concern that's been raised is that might prejudice the plaintiff's rights in choosing the form or the nature of the thing, is it an admiralty case or not, because that third party plaintiff claim could be an admiralty claim. That's what makes it an admiralty case. The jury trial right seems to me Rule 9 just wouldn't necessarily speak to that question about what effect it would have on the plaintiff's ability to get a jury trial or avoid a jury trial. But what is the effect under Rule 9 apart from the interlocutory review right on the plaintiff that should be of concern? Is there anything – in other words, from the government's perspective, is there anything that prejudices the plaintiff's right to control is this an admiralty case or not, if we allow the interlocutory review of the third party claim when that is the thing that made it an admiralty case? Does that make sense? Yeah, and nothing is coming to mind. Nothing is coming to mind, okay. Yes. That's helpful. Thank you. I appreciate that. So the courts in admiralty historically have deferred to fact-finding by non-judges. So if this case truly is an admiralty case, then the district judge had every right to rely on Captain Tunstall's substantial credit. I'm sorry to do this to you again before you get there, but there's this threshold question of are you a proper plaintiff? Sure. Could you just address that? Sure. The U.S. is a proper plaintiff because as a sovereign, it controls and manages the damaged natural resources through various statutes, such as the Endangered Species Act, the Coastal Zone Management Act. And when you say that, do you mean that's just through the general regulatory authority of the United States over all areas that are within the jurisdiction of those statutes? Well, the regulatory authority is what gives NOAA, the federal agency, the right to manage those natural resources. And when you say manage them, I guess I'm trying to get a sense of what is that. I manage my house. I don't think the city of Cambridge manages it, but they do regulate it. Sure. So let's take the Endangered Species Act as an example. The Endangered Species Act prohibits the take, among other things, of species listed as endangered or threatened. And take is a very broad term. It means basically they're adversely affected in some way. So if you're going to adversely affect some species, you need a permit from the relevant federal agency, NOAA. So if you're going onto a reef and coral reefs have corals, many of which are threatened and endangered species, coral reefs serve as habitat for federally protected mammals and other sea life. So if you are going to adversely affect a coral reef in some way, you need a permit from the relevant federal agency. And that is one example of how the United States manages the damaged natural resources. I thought you were relying, just in terms of your ability to sue, you were relying very much on the memorandum of agreement that you have with the Commonwealth. Well, that's an alternative argument, Your Honor. Our primary argument is that the United States has a right to bring our claim because it, as a sovereign, manages and controls natural resources. How does the memorandum of agreement argument go? Well, the United States also serves as a trustee for Puerto Rico's natural resources, and the statute allows the federal trustee to assess the natural resources damages for Puerto Rico, and it also allows the United States to bring a claim on behalf of Puerto Rico to recover those damaged natural resources. 2706B1 allows the President, on behalf of the public, including the Puerto Rican public, to bring a claim to recover natural resources. I'm done with my threshold, but...  So getting back to, I guess, if this case did sound inadmissible, that the district court could rely on Captain Constable. And the district court properly determined that Captain Constable's substantial threat determination was not arbitrary or capricious. The contemporaneous record... Counsel, may I? I'm sorry that we keep asking you threshold questions, but in terms of, you know, the issue of whether the proper standard for the OPA liability based on substantial threat is a de novo legal question, is it arbitrary and capricious? I was just wondering if you could address our decision in U.S. versus Puerto Rico Industries, where it seems like we interpreted a very similar provision in CERCLA and said that the question there was a question of law, a de novo review standard, not an arbitrary and capricious standard type of analysis. Can you just comment on that? Because it did seem very similar, the statutory language. Well, generally, the claims under CERCLA are reviewed under the arbitrary or capricious standard because that's what CERCLA provides. By statute, questions under CERCLA are reviewed for arbitrariness and capriciousness. I guess I'm not recalling what the question was in that case and why it was subject to de novo review. Many of the cases in which the courts are reviewing de novo involve questions of injunctions, which we would agree that the courts should review questions of whether or not to grant an injunction de novo. But in this case, the Congress has delegated the substantial threat determination to the Coast Guard, and we believe delegated decisions that implicate public rights should be reviewed under the arbitrary and capricious standard and upheld unless arbitrary or capricious. If you don't recall the case, it's fine. Just in that case, what my notes indicate is that we were looking at the question of whether there had been a release, and we, under the CERCLA standard, and on that particular question, we said that it was a legal question, and that seems very similar to here, which is we're trying to figure out if there was a substantial threat of a discharge. So you could also provide a 28-J letter on that. Okay. Thank you, Your Honor. And what was the case? It's Puerto Rico Industries. I'm sorry, U.S. versus Puerto Rico Industries. All right. Yes, if I could have the opportunity to submit something to the court, I would appreciate that. Thank you. Thank you. Unless the court has any further questions. Thank you. Thank you, Counsel. Will Attorney Bradley please reintroduce yourself on the record? You have a three-minute rebuttal. Keith Bradley for CIDCO again. Much to say, so I apologize. I'm going to move fast. First thing is, coming back, Judge Rickleton, to your idea about two different cases, I should emphasize it's harder than just the third-party claim. There's a cross-claim as well. We have a claim against those guys who are parties to the case sued by the government, and we designated all of that. Our complaint says this is a 9-H case, like a year before the summary judgment. Second thing is, Ponce, of course, is not a 1292, as you said, Your Honor, so it did not hold that the claims have to be in the interlocutory order because it wouldn't be part of the issue. Rocco, of course, held very clearly, as does the advisory committee, that the admiralty claims do not have to be in the order of being appealed. Third thing is just to talk about these statutes in the government's standing. So I think they cited four of them. There were no endangered species anywhere close to this grounding site at the time. We don't have a huge amount of time. What about the memorandum? Yeah, so two things. One is that also dates from a decade after the events. I didn't hear my colleague cite anything in it that actually says that NOAA or the U.S. government should be suing on behalf of Puerto Rico, and I've never found such a thing in the MOA. I'm not sure that Puerto Rico, that the Commonwealth under its own law, has the authority to assign away its claim that way. The district court wouldn't have had any reason to rely on it. The district court ignored this issue entirely. Was it fully raised to the district court? Oh, very much, very much. The agreement? Oh, the agreement, I don't know that the government raised the agreement. I think they might have, but we very much raised the issue that they don't have a claim. No, I know that was raised. But I'm just trying to figure out why there's so little when I look at the materials about this point if it's potentially dispositive of that issue. That's a great question. I think that's because it doesn't really, the MOA doesn't really matter is the answer. And why is that, because of the text of it? Because of the text of it, because the Commonwealth's control over its resources comes from a statute, from a federal statute, and because if the MOA did what the government says it did, then the Puerto Rican agency that is party to it would have needed the authority to do that, and they don't under Commonwealth law. So for those three reasons, it doesn't make a difference. So these federal statutes, Magnuson-Stevens doesn't even apply in state waters. The Coral Reef Management Act also distinguishes state and federal water, and the Coastal Zone Management Act calls for states to manage their resources. I'm almost out of time, but I do have one more thing to say about which I need to say, which is if you, as you know, we have asked that the court should do the ordinary thing of reversing this district court on all of the issues. If you disagree with us and you think that because the United States doesn't have standing, you should stop there, we do think in that case a Munsingwear vacant role would be necessary. Thank you. I followed you all the way up until you got to Munsingwear, which I thought was a mootness case. I agree it is, but my point is if you – Is there any authority for when you have a – mootness is its own special thing and arises in special circumstances. I never heard of a situation where we vacate because there's a lack of standing as to everything. We'll find something, Your Honor. Okay, that would be helpful. Yeah, but my point is that if you agree with us that the government does not have standing, we do think you have the authority to decide the other issues that we've put before you and you should. But if you choose not to, the judgment below on the rest of it can't stand because the United States wouldn't have had standing to obtain it in the first place, if that makes sense. I agree with that. Thank you. But just to be clear, that doesn't follow the Commons appellate jurisdiction. Agreed. You understand. Agreed. Thank you. Thank you, counsel. That concludes arguments in this case.